UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

OUTAGAMIE COUNTY,

        Plaintiff,

v.                                        Case No. 13-C-234

WISCONSIN DEPARTMENT
OF HEALTH SERVICES and
KITTY RHOADES, SECRETARY

        Defendants.

**DECISION AND ORDER FOR REMAND**

        Upset with the Wisconsin Department of Health Services' interpretation of federal regulations governing its long-term residential care facility, Outagamie County filed this action for declaratory relief in the Circuit Court for Outagamie County. The County seeks a declaration that the Department's interpretation of various Medicare-related regulations governing food handling and over-the-counter medications in nursing homes are excessive and contrary to the stated purposes of the law. Following removal to federal court, the County added the Secretary of the Department as a defendant. The case is before the court on the defendants' motion to dismiss pursuant to Rule 12(b)(1), (2) and (6) of the Federal Rules of Civil Procedure on the ground of sovereign immunity. The court declines to decide whether the defendants are immune from the County's action for declaratory relief. Instead, finding no federal jurisdiction, the court concludes that the case must be remanded to the state court from which it was removed.

**I. THE COMPLAINT**

The County owns and operates a short term rehabilitation and long term care facility called Brewster Village. As a condition of its participation in the Medicare program, Brewster is required to comply with federal health care quality standards. To insure it remains in compliance with the federal standards, Brewster is subject to annual recertification surveys that are conducted by the Wisconsin Department of Health Services (DHS) under an agreement with the Secretary of the United States Department of Health and Human Services (DHHS) pursuant to Section 1864 of the Social Security Act, 42 U.S.C. § 1395aa.

In July 2011, employees of DHS conducted a survey of Brewster and issued seven citations for violations of federal health and safety regulations known as "F-Tags." The citations carry no monetary penalties and, as a result, are not subject to administrative appeal and review. The violations are listed in a report, however, and the facility is required to undertake remedial measures to address the deficiencies. Failure to take remedial action can result in monetary penalties and even de-certification. Only then does a facility have a right to administrative and judicial review.

The County alleges that the F-Tag citations or deficiencies noted in DHS's report reflect an unreasonable interpretation of the federal regulations at issue. For example, in its 2011 survey report, the DHS surveyors issued F-Tag citations for violations of section 2-310.14 of the United States Food and Drug Administration's Food Code because Brewster staff: (1) touched freezer doors and drawer handles before touching clean utensils without first washing their hands; (2) touched control knobs and drawer handles and then handled dishes containing food without first washing their hands or changing gloves; (3) touched a spray can allegedly contaminated with bacon grease with bare skin and then used the same hand to contact cans of food, an ice scoop and a glass; (4)

failed to wash hands after opening a drawer and before removing utensils from the same drawer; (5) contaminated clean gloves by failing to wash their hands before putting the clean gloves on, then used the gloved hands to contact various items in the kitchen area; (6) opened cabinet doors while wearing gloves, then removed glasses from inside the cabinet with the contaminated gloves before placing ice in the glasses and serving them to residents; and (7) failing to change or wash gloves between removing jelly jar lids and then removing bread from a bag and preparing jellied toast for residents.

The County alleges that Brewster was cited for other violations as well. DHS Surveyors also cited Brewster for violations of section 2-402.11 of the Food Code when nursing and dietary staff members were observed preparing plates of food at steam tables and serving plates of food to residents without wearing effective hair restraints. (Am. Compl. ¶ 9.) Brewster was also cited for alleged violations of 42 C.F.R. § 483.60(e), which requires facilities such as Brewster to store drugs and biologicals in locked compartments. Violations of this provision were found after residents were observed with unsecured items such as Neosporin, medicated Gold Bond Powder, and hydrocortisone cream in their rooms. A resident was also observed with a prescribed inhaler. (Am. Compl. ¶ 15.)

The County alleges that it conducted a study to determine the extra time that would be required for various tasks if it complied with the FDA's Food Code as DHS was interpreting it. According to its study, the time necessary to prepare hot cereals would increase by 63 percent, the amount of time necessary to prepare sandwiches would increase by 30 percent, and the amount of time necessary to prepare egg strata would increase by 29 percent. (Am. Compl. ¶ 10.) In what one can only hope is an attempt at hyperbole, the County alleges that by its calculation, compliance with

3

DHS's interpretation of section 2-310.14 of the Food Code would require twenty-eight hand-washes during the preparation of a peanut butter and jelly sandwich, whereas staff currently washes their hands only nine times. (Id. ¶ 11.)

Given the costs of compliance with DHS's interpretation of section 2-310.14 of the Food Code and the absence of any evidence that its current kitchen practices were endangering the health of its residents, Brewster declined to modify its food preparation procedures. (Id. ¶ 23.) However, it did restrict the medications its residents could keep in their own rooms. The County alleges that because their medications have been removed from their rooms and must be requested from staff, residents are less likely to use them, regardless of their personal needs. The County also alleges that the new policy also violates federal nursing home regulations recognizing the rights of residents to "a dignified existence" and "self-determination." (*Id.* ¶¶ 16-19.)

In a second re-certification survey conducted in August 2012, the County alleges that Brewster received six citations. Despite its failure to modify its hand-washing policy, Brewster was not cited in the 2012 report for violating section 2-310.14 of the Food Code. Brewster was again cited, however, for violating section 2-402.11 of the Food Code "when CNAs [certified nursing assistants] were observed plating and taking the temperature of bulk food from steam tables without wearing hair restraints." (*Id.* ¶ 25.) The County alleges that Brewster's CNAs did wear hair restraints during food preparation, but not during food service, including "plating and otherwise distributing food from steam tables on the households." (*Id.* ¶ 26.) The County alleges that the Food Code does not require hair restraints when employees are acting as "hostesses or wait staff if they present a minimal risk of contaminating exposed food, clean equipment, utensils and linens, and unwrapped single-service and single-use articles." (*Id.* ¶ 27.) It alleges that DHS has provided

4

no evidence that the failure of its staff to wear hair restraints in the circumstances observed jeopardizes the health and safety of its residents. The County further alleges that requiring its CNAs to wear hair restraints during plating and food serving from steam tables interferes with Brewster's efforts to provide care for its residents in an environment that maintains and enhances their dignity and individuality. (*Id.* ¶¶ 29-31.)

Based upon these allegations, the County seeks a declaratory judgment that the DHS's interpretation and application of 42 C.F.R. § 483.60(e) and sections 2-301.14 and 2-402.11 of the Food Code are "excessive and unnecessary." (Am. Compl. ¶¶ 36-37, 39.) More specifically, the County wants the court to make the following judicial declarations:

c. That Gold Bond Powder, hydrocortisone cream, Carmex lip balm, dandruff control shampoos and Neosporin are not drugs or biologicals subject to storage in a locked cabinet pursuant to 42 C.F.R. § 483.

d. That the presence of the word "medicated" on the label of any product is insufficient to render that product a drug or biological subject to the restrictions for storage and distribution under the Code of Federal Regulations.

e. That requiring hand-washes, glove-changes or both after each and every contact with a surface or item during food preparation is unnecessary "to safeguard public health and provide consumers food that is safe, unadulterated and honestly presented."

f. The Certified Nursing Assistants are not required to wear hair restraints under the Federal Food Code regardless of whether they are present or whether they participate in the plating and distribution of food to residents in the households.

(*Id.* ¶ 39.)

## II. FEDERAL JURISDICTION

As noted, the defendants removed this action from the Circuit Court for Outagamie County. In their petition for removal, the defendants asserted federal jurisdiction under 28 U.S.C. § 1331.

5

Although the County has not moved to remand the case or otherwise challenged federal jurisdiction, the court is required to make its own determination that it has jurisdiction before making any other ruling. Federal courts have a duty to police their jurisdiction and use care to avoid deciding cases that are not properly before them because they are courts of limited jurisdiction and limitations of subject-matter jurisdiction cannot be waived. *Smoot v. Mazda Motors of America, Inc.*, 469 F.3d 675, 678 (7th Cir. 2006).

Since the dispute is over the meaning of federal regulations, the parties naturally assume federal jurisdiction exists. But that is not necessarily the case. State courts are also required to construe and interpret federal law in cases that come before them. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 275 (1997) ("Interpretation of federal law is the proprietary concern of state, as well as federal, courts. It is the right and duty of the States, within their own judiciaries, to interpret and to follow the Constitution and all laws enacted pursuant to it, subject to a litigant's right of review in this Court in a proper case.").

The issue is complicated by the fact that this is an action for declaratory relief. "Whether an action for a declaratory judgment comes within 'federal question' jurisdiction raises difficult questions." Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 2767, at 649 (1998). In *City of Chicago v. Comcast Cable Holdings, L.L.C.*, for example, the City of Chicago brought an action for declaratory relief against a group of cable TV operators who claimed that federal law barred the City from collecting 5% of the gross revenues the operators received for internet services under their contracts with the City. 384 F.3d 901 (7th Cir. 2004). The City commenced the action in state court, but the defendants removed it to federal court asserting federal question jurisdiction under 28 U.S.C. § 1331. The district court denied the City's motion to remand

6

the case and entered judgment in favor of the operators. The Seventh Circuit held federal jurisdiction was lacking, vacated the judgment and remanded the case to the district court with instruction that it be remanded to the state court. *Id.* at 905. The mere fact that the contract between the parties recognized that payments were subject to limitations imposed by federal law, the Court noted, did not mean that the claim itself was based on federal law. "Mentioning a federal issue in a contract, or for that matter a complaint, does not determine the source of the claim itself." *Id.* at 904-5. Because the claim that the City sought to vindicate arose under its contract with the operators, the Court concluded it arose under state law. *Id.* at 905.

In *Samuel C. Johnson 1988 Trust v. Bayfield County*, by contrast, the Court found federal question jurisdiction did exist in an action brought by a group of landowners to quiet title to their property, over which the County claimed a right derived from federal law to build snowmobile trails. 649 F.3d 799 (7th Cir. 2011). Although on the surface the case appeared to arise under state property law, the Court found that it arose under federal law as well because the property was once owned by the federal government and the landowners based their suit on the terms of the original federal grants. *Id.* at 801. Noting that a "suit to quiet title is functionally a form of declaratory-judgment," the Court concluded that the case fell within "the rule that 'in declaratory judgment cases, the well-pleaded complaint rule dictates that jurisdiction is determined by whether federal question jurisdiction would exist over the presumed suit by the declaratory judgment defendant.'" *Id.*

In this case, it appears that the claim the County seeks to vindicate does arise under federal law. In essence, the County is asking the court to resolve its dispute with DHS over the meaning of federal health and safety regulations governing nursing home facilities that receive Medicare

7

reimbursement. Under its contract with the Secretary of DHHS, DHS determines whether the County's facility is in compliance with the federal regulations. The underlying claim, if there is one, concerns Brewster's compliance with the federal regulations governing nursing homes providing services to Medicare residents. The presumed suit by the declaratory judgment defendant, or in this case, the entity the defendants represent, would be an administrative action by DHHS to impose a sanction on Brewster. This is a claim that clearly arises under federal law. But this raises a more fundamental question: does federal question jurisdiction under section 1331 extend to such a claim?

In *Shalala v. Illinois Council on Long Term Care, Inc.*, the Supreme Court held that it does not. 529 U.S. 1 (2000). There an association of nursing homes, invoking 28 U.S.C. § 1331, sued the Secretary of DHHS seeking a determination that certain Medicare-related regulations violated various statutes and the Constitution. The district court dismissed the case for lack of jurisdiction, but the Seventh Circuit reversed. The Supreme Court granted the Secretary's petition for certiorari and held that 42 U.S.C. § 405(h), as incorporated by § 1395ii, bars federal-question jurisdiction and reversed the Seventh Circuit. In so ruling, the Court held that "Section 1395ii makes § 405(h) applicable to the Medicare Act 'to the same extent as' it applies to the Social Security Act." 529 U.S. at 9. Section 405(h), in turn, makes the judicial review procedure set forth in § 405(g) exclusive. *See* 42 U.S.C. § 405(h) ("No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter."). The complex set of statutory provisions governing review, the Court held, are intended to channel virtually all legal attacks through the agency and thereby "assure[] the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual

8

courts applying 'ripeness' and 'exhaustion' exceptions case by case." *Id.* at 13. The Court recognized that such assurance "comes at a price, namely, occasional individual, delay-related hardship." *Id.* The Court concluded, however, that the price was worth paying: "In the context of a massive, complex health and safety program such as Medicare, embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations, any of which may become the subject of a legal challenge in any of several different courts, paying this price may seem justified." *Id.*

In *Illinois Council*, as in this case, the plaintiff alleged that it had no remedy other than declaratory relief because, until a sanction was imposed, it had no right to review:

> The Council next argues that the regulations, as implemented by the enforcement agencies, deny review in practice by (1) insisting that a nursing home with deficiencies present a corrective plan, (2) imposing no further sanction or remedy if it does so, but (3) threatening termination if it does not. See 42 CFR §§ 488.402(d), 488.456(b)(ii) (1998). Because a home cannot risk termination, the Council adds, it must always submit a plan, thereby avoiding imposition of a remedy, but simultaneously losing its opportunity to contest the lawfulness of any remedy-related rules or regulations. See § 498.3(b)(12). And, the Council's amici assert, compliance actually harms the home by subjecting it to increased sanctions later on by virtue of the unreviewed deficiency findings, and because the agency makes deficiency findings public on the Internet, § 488.325.

*Id.* at 21-22.

The Court rejected the plaintiff's contentions, however, finding them inconsistent with the actual practice of the agency as described by the Secretary of DHHS. The Court observed that the Secretary explained that a nursing home with deficiencies can test the lawfulness of the regulations, or the agency's interpretation of them, simply by refusing to submit a plan and incurring a minor penalty. That appears to be what Brewster did here with regard to the hand washing deficiencies that DHS cited in its 2011 report. The fact that DHS did not cite it for the same deficiencies in

9

2012, notwithstanding the fact that Brewster did not change its policy, suggests that Brewster's informal challenge was successful. But even if it was not, it does not follow that declaratory relief is necessary to prevent significant hardship. Minor penalties, the Secretary noted in *Illinois Council*, "are the norm, for 'terminations from the program are rare and generally reserved for the most egregious recidivist institutions.'" *Id.* at 22 (citing Reply Brief for Petitioners 18 and noting that HHS reports that only 25 out of more than 13,000 nursing homes were terminated in 1995-1996). The Secretary also noted that "remedy imposed on a facility that fails to submit a plan of correction or to correct a deficiency-and appeals the deficiency-is no different than the remedy the Secretary ordinarily would impose in the first instance." *Id.* Finally, while the Secretary conceded that a home's deficiencies are posted on the Internet, she also noted that a home can post a reply. *Id.* In sum, the Court concluded that the statutes that create the special review channel adequately protect the rights of the nursing homes.

Here, of course, the County has sued DHS, not the Secretary of DHHS. But this makes no difference. DHS is standing in the shoes of DHHS. DHS is acting on behalf of, and pursuant to its contract with, the federal agency. *See Nursing Inn of Menlo Park v. California Dept. Of Health Services*, No. C 02-1675, 2003 WL 1872961, *(N.D. Cal. April 7, 2003) (holding that state agency that performs surveys of nursing homes under contract with DHHS not a proper party to action challenging constitutionality of DHHS regulations). If nursing homes may not bring actions for declaratory relief against DHHS directly, it makes no sense to permit them to bring such actions against the state agencies charged with conducting the surveys on DHHS's behalf.

Accordingly and for the reasons set forth above, the court concludes that it lacks jurisdiction over the County's action. The matter is therefore remanded to the Circuit Court for Outagamie

10

County for further proceedings as it deems warranted. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). The Clerk is directed to mail a certified copy of this decision and order to the Clerk of the Circuit Court for Outagamie County.

**SO ORDERED** this __4th__ day of June, 2013.

                                        s/ William C. Griesbach
                                        William C. Griesbach, Chief Judge
                                        United States District Court